IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

| | | |
|---|---|---|
| FRANKLIN D. NEWMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 1:15-CV-00155 |
| | ) | (Judge Keeley) |
| | ) | |
| v. | ) | |
| | ) | |
| TURNER CONSTRUCTION COMPANY | ) | |
| and INDEPENDENCE EXCAVATING, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**TURNER CONSTRUCTION COMPANY'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Turner Construction Company ("Turner"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully submits the following memorandum of law in support of motion for summary judgment.

**I.    BACKGROUND**

Turner is a construction services company that was selected by the United States Federal Bureau of Investigation in 2010 to construct the Phase II expansion of the Biometric Technology Center ("BTC") Office Building and Central Utilities Plan located in Harrison County, West Virginia.[1] As the general contractor, Turner contracted with various subcontractors to fulfill the construction tasks necessary to complete the BTC Phase II expansion. Turner entered into a subcontract agreement with Independence Excavating, Inc. ("Independence") to perform excavating and backfilling work on the BTC project. Turner also entered into a subcontract agreement with Big T Caulking & Services, LLC ("Big T") to provide waterproofing and joint

---

[1] Exh. 1, S.Myers Aff., ¶ 3.

sealants services on the BTC project.  Plaintiff Franklin D. Newman ("Plaintiff") was employed as a foreman for Big T at the BTC project site.

On September 17, 2014, Plaintiff filed a complaint in the Circuit Court of Harrison County, West Virginia against Turner, Independence and The Thrasher Group, Inc. ("Thrasher") alleging that the Plaintiff was injured in September 2012 after falling from a dirt terrace while he was performing his job duties at the BTC project site.[2]  In his complaint, Plaintiff asserted the following claims: (1) Count I - negligent construction and compaction against Independence; (2) Count II – negligent design, testing or inspection against Thrasher; (3) Count III – negligent supervision against Turner; and (4) Count IV – intentional exposure against Turner.[3]  On September 1, 2015, Plaintiff filed an Agreed Order dismissing Thrasher with prejudice from the matter.[4]  That same day, the Circuit Court of Harrison County signed the Agreed Order.[5]  Turner and Independence also stipulated that they are not the employer of the Plaintiff.  As a result, the Plaintiff agreed to dismiss the intentional exposure count as against Turner (Count IV).[6]

With regard to Count III, Plaintiff claims that Turner had a duty to provide its subcontractors' employees with a reasonably safe working environment and that Turner, as the general contractor, breached this duty by failing to "properly supervise the work to make sure that the dirt terrace was properly constructed and compacted so as to make it safe for its sub contractors to use in the completion of their work."[7]  However, the subcontract agreement entered into between Turner and Plaintiff's employer – Big T – imposed primary liability for the safety of Big T's employees on Big T.  Pursuant to the subcontract agreement, Big T also was

---

[2]     Doc. 1, Exh. C-2, ¶¶ 5-8, 12-13, 18-20.
[3]     Doc. 1, Exh. C-2.
[4]     Doc. 1, Exh. C-31.
[5]     *Id.*
[6]     Doc. 10, ¶ 5(j).
[7]     Doc. 1, Exh. C-2, ¶¶ 19-20.

obligated to maintain a full time foreman at the jobsite who was experienced and competent during all phases of his work and had the authority to authorize and implement changes. Here, Big T designated the Plaintiff as its foreman and "competent person" for the BTC project site.

Plaintiff, as the foreman and designated competent person, had an affirmative duty to work in a safe manner to prevent accidents, including to himself. As part of that duty, the Plaintiff was required to inspect the conditions in and around his designated work area and, if any hazards were observed, to alert his supervisor at Big T or the on-site safety manager at Turner.

As explained more fully below, Plaintiff has failed to: (1) present any evidence that the duty to safeguard Big T's employees was primarily imposed upon Turner; (2) present any evidence that Turner exercised significant control over the safety of Big T's operations; (3) failed to present any evidence that Turner did not maintain reasonably safe conditions at the BTC project site; and (4) failed to present any evidence that Turner was guilty of any negligence which either proximately caused or contributed to Plaintiff's injuries. As a result, Turner is entitled to summary judgment as a matter of law.

## II. LEGAL STANDARD

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. *Providence Square Assocs., L.L.C. v. G.D.F., Inc.*, 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining the truth, and limit

its inquiry solely to a determination of whether genuine issues of triable fact exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. *Id.* at 248-52.

The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Stated differently, there must be some evidence of negligence given to a jury before it can determine that Turner is guilty of negligence – that an accident causing injury by itself is not enough.

### III.    STATEMENT OF FACTS

Turner entered into a subcontract agreement with Independence Excavating, Inc. ("Independence") in November 2010 to perform earthwork and site utilities work at the BTC project.[8] Turner also entered into a subcontract agreement with Big T Caulking & Services, LLC ("Big T") in March 2011 to provide "waterproofing" and "joint sealants" services to Turner in connection with the BTC Phase II project.[9] Pursuant to the subcontract agreements entered into

---

[8]    Exh. 1, S.Myers Aff., ¶ 4, Exh. 1-A.
[9]    Exh. 1, S.Myers Aff., ¶ 5, Exh. 1-B; Exh. 2, T.Shupe Depo. Tr., pp. 10-11.

with Independence and Big T, Turner did not retain the right to manage in any fashion the work contracted to Independence or Big T, nor did Turner furnish any equipment to either Independence or Big T for use in performance of services.[10]

With the regard to the Big T subcontract agreement entered into with Turner, Big T was charged with primary responsibility for the safety practices associated with their work.[11] Big T employed Plaintiff as a foreman at the BTC project site.[12] Big T also designated the Plaintiff as the safety representative and "competent person" at the BTC project site.[13] At no point did Plaintiff express any concerns regarding his qualifications to serve as the competent person on behalf of Big T at the BTC project site.[14]

On September 12, 2012, Plaintiff was working alongside his supervisor, Tom Shupe, in an excavated trench in order to reinstall waterproofing materials to the Building 9 north tunnel wall.[15] At or around 11:00 a.m., Plaintiff climbed up a ladder propped against the side of a dirt terrace in order to exit the trench where he was working.[16] After he climbed to the top of the ladder, Plaintiff decided to step onto the landing spot on the left side of the ladder *less than one foot away* from the top edge of the trench.[17] While standing less than one foot away from the

---

[10] Exh. 1, S.Myers Aff., ¶¶ 25-27, Exh. 1-A, TCC_000040, Art. I and TCC_000054 - 000055, ¶¶ 4, 11, 19-29, 33, Exh. 1-B, TCC_000004, Art. I and TCC_000017 - 000018, ¶¶ 1-16; Exh. 2, T.Shupe Depo. Tr., pp. 27-28; Exh. 3, K.Johnson Depo. Tr., pp. 52-53, 55-56, 146-147, 151-153; Exh. 4, F.Newman Depo. Tr., pp. 80-81, 94, 116-117, 139-142; Exh. 5, A.Hampton Depo. Tr., pp. 19, 23; Exh. 6, T.Baker Depo. Tr., p. 23.
[11] Exh. 1, S.Myers Aff., ¶ 8, Exh. 1-B, TCC_000011, Art. XXIX, TCC_000012, Art. XXX, TCC_000022, ¶¶ 9-10.
[12] Exh. 1, S.Myers Aff., ¶ 12; Exh. 1-I; Exh. 2, T.Shupe Depo. Tr., p. 19; Exh. 4, F.Newman Depo. Tr., pp. 151-152.
[13] Exh. 1, S.Myers Aff., ¶ 14, Exh. 1-C; Exh. 2, T.Shupe Depo. Tr., p. 19; Exh. 4, F.Newman Depo. Tr., pp. 102, 104.
[14] Exh. 2, T.Shupe Depo. Tr., p. 23.
[15] Exh. 4, F.Newman Depo. Tr., pp. 121-123, 130-131.
[16] Exh. 4, F.Newman Depo. Tr., pp. 119, 131-132.
[17] Exh. 1, S.Myers Aff., ¶ 28, Exh. 1-H; Exh. 4, F.Newman Depo. Tr., pp. 138-139.

5

edge of the trench, Plaintiff slipped and fell to the bottom of the trench.[18]  At the time of Plaintiff's fall, the trench was approximately "four or five" feet from top to bottom.[19]

Plaintiff claims the dirt on the landing spot was negligently built and compacted by Independence.[20]  He further alleges that the dirt terrace collapsed because Turner did not properly supervise the work to make sure the dirt terrace was properly constructed and compacted so as to make it safe for its subcontractors to use in the completion of their work.[21]

## IV.   ARGUMENT

Plaintiff's theory of liability against Turner is that Turner did not properly supervise the work performed at or around the Building 9 north tunnel to make sure that the dirt terrace where the Plaintiff was standing was properly constructed and compacted so as to make it safe for its subcontractors to use in the completion of their work.[22]  Further, Plaintiff asserts that Turner, "*in requiring the plaintiff, Franklin D. Newman, to work on a dirt terrace* that has been negligently compacted created an unsafe working condition in the workplace of the plaintiff, Franklin D. Newman and further the negligence of the defendant, Turner Construction Company proximately caused the Injury of the plaintiff, Franklin D. Newman, and the damages described herein."[23]

Under West Virginia law, a general contractor has a duty to provide its subcontractors' employees with a reasonably safe environment.  *Hall v. Nello Teer Co.*, 203 S.E.2d 145, 149 (W. Va. 1974).  However, Turner assumed no duty of care as it relates to Plaintiff.  Rather, the subcontract agreement entered into between Turner and Big T imposed liability for the safety of

---

[18]   Exh. 1, S.Myers Aff., ¶ 28, Exh. 1-H; Exh. 4, F.Newman Depo. Tr., pp. 138-139.
[19]   Exh. 4, F.Newman Depo. Tr., pp. 136, 153-154.
[20]   Doc. 1, C-2, ¶ 13.
[21]   *Id.* at ¶ 19.
[22]   Doc. 1, Exh. C-2, ¶ 19.
[23]   Doc. 1, Exh. C-2, ¶ 20 (emphasis added).  During Plaintiff's deposition, he testified that no one instructed or directed Plaintiff to stand or work on the direct terrace less than a foot away from the edge. Exh. 4, F.Newman Depo. Tr., pp. 139-140.

Big T's employees on Big T. Where there is no legal duty owed by one person to another in respect to the safety of the person, there can be no actionable negligence. *Lemley v. United States,* 317 F.Supp. 350, 359 (N.D. W.Va. 1970), *aff'd* 455 F.2d 522 (4th Cir. 1971). Further, Plaintiff has not presented sufficient evidence that Turner exercised any significant control over the safety of Big T's operations, nor has Plaintiff established how Turner was negligent in supervising the safety of Big T's employees.

### A. **Turner Owed No Duty to Plaintiff**

The subcontract agreement ("Agreement") between Big T and Turner imposed primary liability upon Big T for the safety of Big T employees.

> The Subcontractor agrees that the prevention of accidents to workman and property engaged upon in the vicinity of the Work is its responsibility. The Subcontractor agrees to comply with all Federal, State, Municipal and local laws, ordinances, rules, regulations, codes, standards, orders, notices and requirements concerning safety as shall be applicable to the Work, including, among others, the Federal Occupational Safety and Health Act of 1970, as amended, and all standards, rules, regulations and orders which have been or shall be adopted or issued thereunder, and with the safety standards established during the progress of the Work by the Contractor. When so ordered the Subcontractor shall stop any part of the Work which the Contractor deems unsafe until corrective measures satisfactory to the Contractor have been taken … Failure on the part of the Contractor to stop unsafe practices shall in no way relieve the Subcontractor of its responsibility therefor.[24, 25]

Similarly, the Agreement provided that:

> The Subcontractor shall obtain and pay for all necessary permits and licenses pertaining to the Work and shall comply with all Federal, State, Municipal and

---

[24] Exh. 1, S.Myers Aff., ¶¶ 7-8, Exh. 1-B, TCC_000011, Art. XXIX. There is nothing in the language of Article XXIX which requires Turner to assure Big T's compliance with any Federal, State, Municipal and local laws, ordinances, rules, regulations, codes, standards, orders, notices and requirements concerning safety, including, OSHA. Rather, Big T agreed to comply with the required safety standards. Additional contract language supports the view that Big T, not Turner, was responsible for compliance with applicable law. *See e.g.,* Exh. 1, S.Myers Aff., Exh. 1-B, TCC_000004, Art. I and Exh. 1-B, TCC_000024, ¶ 24.

[25] Turner entered into a similar subcontract agreement with Independence that contains the exact language. Exh. 1, S.Myers Aff., ¶ 8, Exh. 1-A.

7

local laws, ordinances, codes, rules, regulations, standards, orders, notices and requirements, including but not limited to those *relating to safety*, discrimination in employment, fair employment practices, immigration laws or equal employment opportunity, and whether or not provided for by the Plans, Specifications, General Conditions, or other Contract Documents, without additional charge or expense to Contractor and shall also be responsible for and correct, at its own cost and expense, any violations thereof from or in connection with the performance of its Work.[26]

The Agreement further provided that:

The Subcontractor hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of any tier of the Subcontractor or otherwise … arising out of or occurring in connection with the execution of the Work, or in preparation for the Work, or any extension, modification, or amendment to the Work by change order or otherwise.[27]

The Agreement required Big T to "furnish, install, maintain, and remove all hoists, shoring, rigging, bracing, safety equipment, scaffolding including all fees and permits required for the Work of this Subcontract."[28]

Pursuant to the Agreement, Big T also was obligated to "maintain a full time Foreman at the jobsite who is experienced and competent during all phases of his work and has the authority to authorize and implement changes."[29] In performance of its services, Big T was required to inspect all areas that were to receive waterproofing and to notify Turner of any defects or conditions that needed corrected prior to starting work.[30]

---

[26] Exh. 1, S.Myers Aff., ¶ 9, Exh. 1-B, TCC_000009, Art. XXI (emphasis added).
[27] Exh. 1, S.Myers Aff., ¶ 10, Exh. 1-B, TCC_000012, Art. XXX.
[28] Exh. 1, S.Myers Aff., ¶ 11, Exh. 1-B, TCC_000024, ¶ 24.
[29] Exh. 1, S.Myers Aff., ¶ 12, Exh. 1-B, TCC_000022, ¶ 10.
[30] Exh. 1, S.Myers Aff., ¶ 15, Exh. 1-B, TCC_000017, ¶ 4; Exh. 1-D, TCC_000790, p. 22.

8

The Agreement also incorporated by reference Turner's site-specific safety plan and required Big T to abide by its terms.[31] Turner's site-specific safety plan mandated that Big T designate a "competent person" as defined by the Occupational Health & Safety Act ("OSHA") *and* a safety representative who shall have as a minimum, the OSHA 30 Hour construction safety training.[32] OSHA defines a "competent person" as one who is capable of identifying existing and predicative hazards in the surrounding or working conditions which are unsanitary, hazardous or dangerous to employees, *and* who has the authorization to take prompt corrective measures to eliminate them." *See* 29 CFR §1926.32 (emphasis added).

Turner's site-specific safety plan further defined the duties of the competent person as it relates to performance of inspections in and around the areas the subcontractor was working.[33] Specifically, Turner's site-specific safety plan provided, in relevant part:

> 1. This Subcontractor acknowledges that certain operations require their competent person to perform inspections and implement certain produces prior to employees performing work.
>
> 2. ***All Subcontractors*** will perform said inspections and follow certain procedures prior to including but not limited to (if applicable to subcontractors work) scaffold inspection, ***excavation inspections***, Lock Out Tag Out, Confined Space, Hot Work, equipment/machine inspections, etc. Fire extinguishers and first aid cases shall be inspected monthly.[34, 35]

---

[31] Exh. 1, S.Myers Aff., ¶ 16, Exh. 1-B, TCC_000012, Art. XXIX, TCC_000026, ¶ 39, TCC_000027, ¶ 50. The subcontract agreement with Independence also contained this requirement. Exh. 1, S.Myers Aff., Exh. 1-A, TCC_000065, ¶ 39.
[32] Exh. 1, S.Myers Aff., ¶ 17, Exh. 1-D, TCC_000778, p. 10 and TCC_000792, p. 24.
[33] Exh. 1, S.Myers Aff., Exh. 1-D, TCC_000790.
[34] Exh. 1, S.Myers Aff., Exh. 1-D, TCC_000790 (emphasis added).
[35] Turner's site-specific safety plan also provided that:

> 6. A competent person will be on-site during all excavation work to determine the soil type and its stability by performing one visual and one manual test in accordance with 29 CFR 1926, Subpart P Appendix A.
>
> …

With regard to the subcontractors' safety representative, Turner's site-specific safety plan delegated, among other things, the following responsibilities:

(a) ensuring that their employees comply with Turner's Safety Program and all Federal, State, and Local Codes and Regulations, including Turner's Environmental, Safety and Health Plan;

(b) ensuring compliance with the site-specific Safety and Health Orientation process for all personnel assigned to the project;

(c) training their employees to perform their work in a safe manner and to recognize and correct potential and actual hazards and unsafe acts;

(d) making a minimum of one complete safety inspection of their work per week with a written report to Turner noting corrective action to identified hazards;

(e) reporting all safety-related matters to Turner; and

(f) making daily inspections of their work areas, activities, and all tools and equipment being used that day.[36]

According to Turner's site-specific safety plan, all subcontractors, including Big T, were required to "provide and maintain a safe, hazard free work place for their employees, fellow workers, and the general public. As a minimum, [Big T's] Safety, Health, Environmental, and Incident Prevention Program shall incorporate all the principles of Turner's Project, Safety, Health, Environmental, and Incident Prevention Program and shall be submitted [to Turner] for

---

13. Each employee affected by the excavation and trenching system must be trained in the procedures specific to the project, i.e., access/egress points, locations of utilities, etc.
14. Each affected employee must be trained in all sloping, benching, and shoring procedures prior to entering the excavation or trench.
15. A competent person must be on-site throughout the excavation and/or trenching operation to determine soil type through visual and manual testing, hazard identification, effectiveness of sloping, benching, or shoring procedures, etc.

Exh. 1, S.Myers Aff., Exh. 1-D, TCC_000807, ¶¶ 6, 13-15; *see also* Exh. 3, K.Johnson Depo. Tr., pp. 156-157.

[36] Exh. 1, S.Myers Aff., ¶ 19, Exh. D, TCC_000783, p. 15 and TCC_000793, ¶ 6.

review prior to commencing work activities."[37] Big T's Safety Plan mandated that all work performed by Big T employees were to "adhere to and abide by" Big T's Safety Plan, federal & state OSHA rules and regulations, and [Turner's] safety rules and regulations.[38] The Plaintiff received a copy of Big T's Safety Plan and acknowledged that he was "familiar with what is expected of [him] for the well-being of [him] and [his] co-workers."[39]

Turner's site-specific safety plan further mandated that no subcontractors were permitted to allow its employees to "engage in any work activities requiring training/certification until said training and certification are completed. Prior to workers coming on site, Subcontractor must ensure workers are trained in the above standards and any other State, Federal, Local, or owner required training."[40]

As demonstrated by the express provisions of both the Agreement and Turner's site-specific safety plan, Turner contractually delegated liability upon Big T for the safety of its employees.

To the extent that Plaintiff argues Turner exercised sufficient control over the safety of Big T's operations to impose a duty upon Turner, this argument is without merit. The Agreement is the best indicator of whether Turner retained significant control over Big T's work so as to impose a duty upon Turner. Pursuant to the express terms of the Agreement:

> The Subcontractor shall perform and furnish all the work, labor, services, materials, plant, equipment, tools, scaffolds, appliances and other things necessary for Waterproofing and Joint Sealants … .[41, 42]

---

[37] Exh. 1, S.Myers Aff., ¶ 20, Exh. 1-D, TCC_000771.
[38] Exh. 1, S.Myers Aff., ¶ 21, Exh. 1-F, Big T Caulking_000022.
[39] Exh. 1, S.Myers Aff., ¶ 22 and Exh. 1-G; Exh. 4, F.Newman Depo. Tr., pp. 82-85.
[40] Exh. 1, S.Myers Aff., ¶ 24, Exh. 1-D, TCC_000789.
[41] Exh. 1, S.Myers Aff., ¶ 25, Exh. 1-B, TCC_000004, Art. I.
[42] The subcontract agreement entered into between Independence and Turner also required Independence to "perform and furnish all the work, labor, services, materials, plant, equipment, tools, scaffolds, appliances and other things necessary for Earthwork & Site Utilities . . .." Exh. 1, S.Myers Aff., Exh. 1-A, Art. I.

Although Turner had the general right to stop unsafe work that was observed, as well as the broad general power of supervision and control as to the results of the work at the BTC project site, the law does not recognize this as sufficient *de facto* control over Plaintiff's work to impose liability upon Turner. See *Shaffer v. Acme Limestone Co., Inc.*, 524 S.E.2d 688, 696-97 (W.Va. 1999). See also *McClean v. Federal St. Constr. Co.*, No. 94-2093, 1996 U.S. App. Lexis 2028, at *2 (4th Cir. Feb. 12, 1996) (applying West Virginia law) (agreement provided that subcontractor was responsible for liability for safety of its employees and no evidence was presented to support a finding that contractor retained any significant control over the safety of the subcontractor's operations); *Lemley v. United States,* 317 F.Supp. 350, 360-361 (N.D. W.Va. 1970) ("[M]ere reservation of a right to inspect and enforce certain safety measures is not indicative of [defendant's] control over the employees of the independent contractor and cannot be a basis for the prosecution under the Federal Tort Claims Act, and, as we have seen, West Virginia has found this principle to be applicable to private parties as well").[43]

The various rights reserved by Turner in the Agreement did not give Turner the power to control the manner, means or methods of either Independence's or Big T's performance.[44] Further, the subcontract agreements and testimony elicited by Turner, Independence, Big T, and Plaintiff establish that Turner exercised no control over the manner, means or methods of the work Independence or Big T was engaged while Plaintiff was allegedly injured, including the

---

[43] Similarly, *Comment c, Restatement (Second) of Torts* § 414, provides: "In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."
[44] Exh. 1, S.Myers Aff., ¶¶ 25-26, Exh. 1-A and Exh. 1-B.

construction of the dirt terrace where Plaintiff was standing.[45] Nor did Turner furnish any equipment to either Independence or Big T for use in performance of its services.[46]

Further, Turner could not have known of the condition of the excavation immediately prior to Plaintiff's fall and Plaintiff failed to present any evidence that Turner did not turn over a reasonably safe workplace to Big T and its employees in and around the Building 9 north tunnel area.[47] Thereafter Turner exercised no control in the manner in which the excavation or waterproofing was performed, nor did Turner exercise any control over the equipment used by Big T and its employees. Turner's only connection with Big T's operations is the mere reservation of inspection rights and the power to enforce certain safety measures – which is insufficient by itself to impose a duty to safeguard Big T's employees. *See Lemley*, 317 F.Supp at 361.

As a result, Turner is entitled to summary judgment and Plaintiff's negligent supervision claim against Turner should be dismissed with prejudice.

B. **Plaintiff Had An Affirmative Duty to Work in a Safe Manner and to Prevent Accidents**

Pursuant to the Agreement, Big T was responsible for designating a qualified competent person and safety representation for the BTC project site.[48, 49] Big T designated the Plaintiff for

---

[45] Exh. 1, S.Myers Aff., ¶¶ 25- 26, Exh. 1-A, TCC_000049, Art. I and TCC_000054 - 000055, ¶¶ 4, 11, 19-29, 33, Exh. 1-B, TCC_000004, Art. I and TCC_000017 - 000018, ¶¶ 4-8, 10-14, 16; Exh. 2, T.Shupe Depo. Tr., pp. 27-28; Exh. 3, K.Johnson Depo. Tr., pp. 55-56, 151-153; Exh. 4, F.Newman Depo. Tr., pp. 116-117, 139-142; Exh. 5, A.Hampton Depo. Tr., pp. 19, 23; Exh. 6, T.Baker Depo. Tr., p. 23.
[46] Exh. 1, S.Myers Aff., ¶ 27, Exh. 1-A, TCC_000049, Art. I and TCC_000054 - 000055, ¶¶ 4, 11, 19-29, 33, Exh. 1-B, TCC_000004, Art. I and TCC_000017 - 000018, ¶¶ 1-16; Exh. 3, K.Johnson Depo. Tr., pp. 52-53, 146-147; Exh. 4, F.Newman Depo. Tr., pp. 80-81, 94.
[47] Exh. 3, K.Johnson Depo. Tr., pp. 79-80.
[48] Exh. 1, S.Myers Aff., ¶¶ 12, 14, Exh. 1-B, TCC_000022 and Exh. 1-C, TCC_000148.
[49] The subcontract agreement with Independence also had the same requirement. Exh. 1, S.Myers Aff., Exh. 1-A, ¶ 10.

both of these roles.[50] Plaintiff participated in and completed the OSHA 30 Hour construction safety training course, which included training on various topics such as safety orientation, general safety and health provisions, OSHA rules and regulations, fall protection, proper use of stairways and ladders, proper use of scaffolds, and safety and health aspects of excavation and trenching.[51]

Plaintiff, as the foreman, designated safety representative, and competent person, understood that he had an affirmative duty to work in a safe manner to prevent accidents, including to himself.[52] As part of that duty, Plaintiff was required to inspect the conditions in and around his designated work area and, if any hazards were observed, to alert his supervisor at Big T or the on-site safety manager at Turner.[53] The duty to inspect includes inspection of areas where trenching and excavation activities are occurring at the site.[54] Thus, Plaintiff had a duty to properly inspect the work conditions in and around his designated work area, and if the excavation was negligently compacted as alleged, Plaintiff had a duty to identify the hazard and to notify either his supervisor at Big T or a representative from Turner.[55]

Turner reasonably (and contractually) delegated the responsibility to Big T to ensure that the areas where the Plaintiff worked were safe. Indeed, Big T designated the Plaintiff as the individual charged with that responsibility. Plaintiff failed to present any evidence on how Turner was negligent in supervising the safety of Big T's operations. Nor has Plaintiff

---

[50] Exh. 1, S.Myers Aff., ¶ 14, Exh. 1-C, TCC_000148; Exh. 2, T.Shupe Depo. Tr., p. 19, Exh. 4, F.Newman Depo. Tr., pp. 102, 104.
[51] Exh. 1, S.Myers Aff., ¶ 17, Exh. 1-E; Exh. 4, F.Newman Depo. Tr., pp. 75-78, 108-111.
[52] Exh. 4, F. Newman Depo. Tr., pp. 109-110.
[53] Exh. 3, K.Johnson Depo. Tr., pp. 63, 150-151.
[54] *See e.g.,* Exh. 1, S.Myers Aff., Exh. 1-D, TCC_000790.
[55] Moreover, one cannot charge another in damages for negligence where he himself failed to exercise due care for his own safety. *See Shanklin v. Allis-Chalmers,* 254 F. Supp. 223 (S.D.W. Va. 1966), *aff'd* 383 F.2d 819 (4th Cir. 1967).

established that Turner created any alleged hazards that may have caused or contributed to Plaintiff's claimed injuries.

## IV. CONCLUSION

Plaintiff has not presented any evidence that the duty to safeguard Big T's employees was primarily imposed upon Turner nor has Plaintiff presented any evidence that Turner exercised significant control over the safety of Big T's operations. Rather, as demonstrated herein, Turner did not control the manner, means or methods of the work performed by Independence or Big T. Further, Plaintiff not only failed to present any evidence that Turner did not maintain reasonably safe conditions at the BTC project site, but Plaintiff failed to present any evidence that Turner was guilty of any negligence which either proximately caused or contributed to Plaintiff's injuries. As a result, Turner is entitled to summary judgment as a matter of law.

Date: August 15, 2016

*/s/ Steven A. Luxton*
Steven A. Luxton, Esq., WV Bar #11038
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue N.W.
Washington, DC 20004
(202) 739-5452 (phone)
(202) 739-3001 (facsimile)
sluxton@morganlewis.com

Matthew H. Sepp, Esq., PHV#24227
Morgan, Lewis & Bockius LLP
One Oxford Centre, 32nd Floor
Pittsburgh, PA 15317
(412) 560-7432 (phone)
(412) 560-7001 (facsimile)
msepp@morganlewis.com

David K. Hendrickson, Esq., WV Bar #1678
Andrew W. Holbrook, Esq., WV Bar #12663

              Hendrickson & Long, PLLC
              214 Capitol Street (zip 25301)
              P.O. Box 11070
              Charleston, WV 25339
              (304) 346-5500 (phone)
              (304) 346-5515 (facsimile)
              daveh@handl.com
              aholbrook@handl.com

              *Counsel for Defendant Turner*
              *Construction Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of August, 2016, the foregoing **TURNER CONSTRUCTION COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was served electronically with the Clerk of Court using the CM/ECF system, which will send notification of said filing to the following parties and counsel of record.

J. Michael Ranson, Esq.
Cynthia M. Ranson, Esq.
Ranson Law Offices
1562 Kanawha Blvd., East
P.O. Box 3589
Charleston, WV  25336-3589
*Counsel for Plaintiff*

G. Patrick Jacobs, Esq.
Jacobs Law Offices
7020 MacCorkle Avenue, S.E.
Charleston, WV  25304
*Counsel for Plaintiff*

                                                                               */s/ Steven A. Luxton*
                                                                               Steven A. Luxton