IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FRANKLIN D. NEWMAN,**

**Plaintiff,**

**v.**                              **// CIVIL ACTION NO. 1:15CV155**
                                    **(Judge Keeley)**

**TURNER CONSTRUCTION COMPANY and**
**INDEPENDENCE EXCAVATING, INC.,**
             **Defendants.**

MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT [DKT. NOS. 36, 38, AND 40]

Following a worksite accident, the plaintiff, Franklin D. Newman ("Newman"), filed a complaint in the Circuit Court of Harrison County, West Virginia, on September 8, 2014, against Turner Construction Co. ("Turner"), Thrasher Group, Inc. ("Thrasher"), and Independence Excavating, Inc. ("Independence") (Dkt. No. 1-3 at 2). Following the voluntary dismissal of defendant Thrasher, Turner and Independence removed the case to this Court (Dkt. No. 1). Now pending are motions for summary judgment filed by Newman, Turner, and Independence that are fully briefed and ripe for review (Dkt. Nos. 36; 38; 40). For the reasons that follow, the Court **DENIES** the parties' motions.

FACTUAL BACKGROUND

**I.   The Subcontract Agreements and the Safety Plan**

Turner was selected by the Federal Bureau of Investigation to construct Phase II of the Biometric Technology Center ("BTC") in

## MEMORANDUM OPINION AND ORDER
### DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS
### FOR SUMMARY JUDGMENT [DKT. NOS. 36, 38, AND 40]

Harrison County, West Virginia (Dkt. No. 38-1 at 2). Independence executed a subcontract agreement with Turner in December 2010 for "Earthwork & Site Utilities" (Dkt. No. 38-2 at 7). Newman's employer, Big T Caulking & Services, LLC ("Big T"), executed a subcontract with Turner in March 2011 to perform "Waterproofing and Joint Sealants" work (Dkt. No. 38-3 at 5).

Both subcontracts are identical in significant respects, and contain several provisions particularly relevant to safety and liability:

> The Subcontractor agrees that the prevention of accidents to workmen and property engaged upon in the vicinity of the Work is its responsibility. The Subcontractor agrees to comply with all Federal, State, Municipal and local laws, ordinances, rules, regulations, codes, standards, orders, notices and requirements concerning safety as shall be applicable to the Work, including, among others, the Federal Occupational Safety and Health Act of 1970, as amended, and all standards, rules, regulations and orders which have been or shall be adopted or issued thereunder, and with the safety standards established during the progress of the Work by the Contractor. When so ordered the Subcontractor shall stop any part of the Work which the Contractor deems unsafe until corrective measures satisfactory to the Contractor have been taken, and the subcontractor agrees that it shall not have nor make any claim for damages growing out of such stoppages. . . . Failure on the part of the Contractor to stop unsafe practices shall in no way relieve the Subcontractor of its responsibility therefor.

(Dkt. No. 38-2 at 15). The agreements also broadly delegate responsibility and liability to the subcontractors for any damages or injuries:

> The Subcontractor hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of any tier of the Subcontractor or otherwise, and to all property caused by, resulting from, arising out of or occurring in connection with the execution of the Work, or in preparation for the Work, or any extension, modification, or amendment to the Work by change order or otherwise.

Id. at 15. Although, as subcontractors, Independence and Big T were required to indemnify and hold Turner harmless for any injuries, they were not liable for Turner's sole negligence. Id.

The agreements also incorporated Turner's site-specific Safety Plan. Id. at 28. The Safety Plan specified that one of Turner's main responsibilities as the general contractor was "to administer a comprehensive Safety, Health, Environmental, and Incident Prevention Program" (Dkt. No. 38-5 at 4). Under the Safety Plan, each subcontractor had to designate a "competent person," as defined by the Occupational Safety and Health Administration ("OSHA"), for subjects such as fall protection and excavations. Id. at 11. OSHA defines a "competent person" as "one who is capable of identifying existing and predictable hazards in the surroundings or

3

working conditions which are unsanitary, hazardous, or dangerous to employees, and who has authorization to take prompt corrective measures to eliminate them." 29 C.F.R. § 1926.32(f). The Safety Plan noted that competent persons may be required to inspect the worksite prior to performing work, including "excavation inspections" if applicable to the subcontractor's work (Dkt. No. 38-5 at 23).

The subcontractor's safety representative was expected to conduct a complete safety inspection each week, and a daily inspection of the work area so that hazards could be corrected or reported. Id. at 16, 26. For excavation and trenching operations in particular, "exposing contractors" were required to train involved employees, and a competent person had to be on-site at all times. Daily inspections of excavations were to take place, with all reports to be submitted to Turner. Id. at 39.

## II. Newman's Injury

The general circumstances of Newman's accident are undisputed. During the spring of 2012, Big T was performing waterproofing services on the Building 9 North Tunnel of the BTC project (Dkt. No. 38-1 at 4). Problems with soil settlement led to water infiltration, and, in September 2012, Turner directed Independence

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS**
**FOR SUMMARY JUDGMENT [DKT. NOS. 36, 38, AND 40]**

to excavate along portions of the tunnel so that Big T could inspect the waterproofing and perform any necessary remedial work. Id. at 4-5. As required by the subcontract agreement, Big T had designated Newman as its safety representative and OSHA competent person (Dkt. No. 38-4).

On September 12, 2012, at approximately 11:00 a.m., while working in a trench excavated by Independence, Newman climbed out of the trench on a ladder. When he reached the top of the trench, he stepped off the ladder and turned to speak with someone on the other side of the trench. According to the incident report prepared by Nathan Parrish, Turner's safety manager, as well as Newman's own testimony, he was standing less than one foot from the edge of the trench[1] for less than one minute when the ground gave way underneath him, causing him to fall into the trench (Dkt. Nos. 38-9 at 2; 46-14 at 28-29). Newman reported the incident to Turner the next day. He denied needing medical care, despite reporting that he "felt [his] back pop" (Dkt. Nos. 38-9; 38-10).

---

[1] Tom Shupe, Big T's owner, was present at the time and said that he would have no reason to doubt Newman's statement (Dkt. No. 46-12 at 11).

### MEMORANDUM OPINION AND ORDER
### DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS
### FOR SUMMARY JUDGMENT [DKT. NOS. 36, 38, AND 40]

There is a significant dispute concerning who was expected to inspect the trench excavated by Independence, and how thorough each party's inspection needed to be. Big T's owner, Tom Shupe, testified that, because excavation was not Big T's specialty, he relied on "experts" at Turner, Thrasher, and Independence to ensure that an excavated area was adequate to perform work (Dkt. No. 47-3 at 3). In addition, Newman testified that he relied on Independence to let him know when the trench was ready for Big T to safely conduct its work (Dkt. No. 46-14 at 21). On the other hand, Nathan Parrish, Turner's safety inspector, testified that Big T should have submitted an excavation inspection report for each day that it worked in an excavation (Dkt. No. 48-5 at 4). Turner's superintendent, Kurt Johnson, also believed that the competent persons for Independence and Big T were responsible for reviewing safety, including excavations (Dkt. No. 46-13 at 5-6).

### LEGAL STANDARD

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS**
**FOR SUMMARY JUDGMENT [DKT. NOS. 36, 38, AND 40]**

judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. <u>Providence Square Assocs., L.L.C. v. G.D.F., Inc.</u>, 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. <u>Id.</u> at 248–52.

## MEMORANDUM OPINION AND ORDER
### DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS
### FOR SUMMARY JUDGMENT [DKT. NOS. 36, 38, AND 40]

## APPLICABLE LAW

### I.  Negligence

"In order to establish a prima facie case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff." Syl. Pt. 3, Aikens v. Debow, 541 S.E.2d 576 (W. Va. 2000). Whether the defendant owes a duty is a matter of law for the court to determine. Id. at Syl. Pt. 5. "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised." Syl. Pt. 3, Sewell v. Gregory, 371 S.E.2d 82 (W. Va. 1988). Under West Virginia's modified comparative fault approach, a plaintiff may recover damages "so long as his negligence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident." Syl. Pt. 3, Bradley v. Appalachian Power Co., 256 S.E.2d 879, 885 (W. Va. 1979).[2]

---

[2] This rule applies despite the defendants' repeated citation to Shanklin v. Allis-Chalmers, 254 F. Supp. 223 (S.D.W. Va. 1966), aff'd 383 F.2d 819 (4th Cir. 1967), which applies long-overruled contributory negligence law.

MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT [DKT. NOS. 36, 38, AND 40]

## II.  General Contractor Duty of Care

There are two principal means by which a general contractor may be held liable to one injured on its worksite. First, the negligence of an independent contractor may be imputed to the general contractor if it controlled or had the right to control the work of the independent contractor. Syl. Pt. 1, <u>Sanders v. Georgia-Pacific Corp.</u>, 225 S.E.2d 218 (W. Va. 1976). The employer "may retain broad general power of supervision and control as to the result of the work" without changing its duties. Syl. Pt. 4, <u>Shaffer v. Acme Limestone Co., Inc.</u>, 524 S.E.2d 688 (W. Va. 1999). This includes "the right to inspect, to stop the work, to make suggestions or recommendations as to the details of the work, or to prescribe alterations or deviations in the work." <u>Id.</u>[3]

---

[3] An employer cannot delegate its duty of reasonable care when undertaking inherently dangerous activities. <u>King v. Lens Creek Ltd. P'ship</u>, 483 S.E.2d 265, 271 (W. Va. 1996). "To constitute an inherently dangerous activity, the work must be dangerous in and of itself and not dangerous simply because of the negligent performance of the work." <u>Id.</u> at Syl. Pt. 3. Waterproofing and excavating, especially the relatively shallow type at issue here, are not inherently dangerous, as the risks involved can "be eliminated or significantly reduced by taking proper precautions." <u>Robertson v. Morris</u>, 546 S.E.2d 770, 773-74 (W. Va. 2001) (holding that climbing a tree to cut it down was not inherently dangerous work); <u>France v. S. Equip. Co.</u>, 689 S.E.2d 1 (W. Va. 2010) (holding that sheet metal roofing work was not inherently dangerous); <u>see also Robinson v. Poured Walls of Iowa, Inc.</u>, 553 N.W.2d 873 (Iowa

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS**
**FOR SUMMARY JUDGMENT [DKT. NOS. 36, 38, AND 40]**

Second, a general contractor may be liable for breach of its own duty. See Pasquale v. Oh. Power Co., 418 S.E.2d 738, 751 (W. Va. 1992). "A general contractor or the employer of an independent contractor has the duty . . . to furnish such employee a reasonably safe place in which to work." Syl. Pt. 1, Hall v. Nello Teer Co., 203 S.E.2d 145 (W. Va. 1974). However, "a property owner only has a duty to turn over a reasonably safe workplace to an independent contractor; the property owner generally cannot be held liable for any hazards thereafter created by the independent contractor." France v. S. Equip. Co., 689 S.E.2d 1 (W. Va. 2010).

**LEGAL ANALYSIS**

**I.    Turner's Duty of Care**

Newman's claim for negligent supervision against Turner alleges that it failed to "properly supervise the work to make sure that the dirt terrace was properly constructed and compacted," thus creating an "unsafe working condition" (Dkt. No. 1-4 at 12). In response, Turner argues it owed no duty to Newman because it had delegated liability to Big T and did not exercise sufficient control to warrant imposition of vicarious liability (Dkt. No. 42

_____

1996) (finding that risks of excavation are the result of failing to take precautions, not the nature of the work itself).

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT [DKT. NOS. 36, 38, AND 40]**

at 7-13). Despite Turner's lack of control, however, it still owed Newman a duty to provide a reasonably safe work environment, and factual disputes preclude a ruling that Turner complied with that duty.

### A.  Vicarious Liability

Turner asserts that it did not exercise sufficient control to be vicariously liable for Newman's injuries. A general contractor is not liable for injuries inflicted by its independent contractor if it "neither controlled nor had the right to control the work." Sanders, 225 S.E.2d 218, Syl. Pt. 1. In Shaffer, defendant Acme Limestone Co. ("Acme") hired a trucking company to deliver stone. 524 S.E.2d at 697. Acme coordinated its work with the trucking company by directing which products to pick-up, setting compensation for the trucking company's work, suggesting the most economic routes, and requiring safety hazard training. Id. at 696. There was no evidence, however, that the trucking company was required to follow any of the general contractor's suggestions regarding performance. Id.

The court held that one who hires an independent contractor does not become liable for its negligence even though the employer "retain[ed] broad general power of supervision and control . . .

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS**
**FOR SUMMARY JUDGMENT [DKT. NOS. 36, 38, AND 40]**

including the right to inspect, to stop the work, to make suggestions or recommendations as to the details of the work, or to prescribe alterations or deviations." <u>Id.</u>[4] Ultimately, the court found that Acme did not have the power of control necessary to subject it to liability for the trucking company's wrongs. <u>Id.</u>

Here, the evidence of record establishes that Turner did not exercise sufficient control to make it liable for the negligence of its independent contractors. As the general contractor, Turner conducted safety inspections and coordinated the work (Dkt. No. 43-5 at 3). It retained a permissible interest in safety. The subcontract agreements provided Turner with the right to stop work it believed was unsafe (Dkt. No. 38-3 at 13), and the Safety Plan reserved broad authority for Turner employees to ensure compliance (Dkt. No. 38-5 at 14-15).

Likewise, Turner merely exercised "broad general power of supervision and control" over performance of the work itself. <u>Shaffer</u>, 524 S.E.2d 688, Syl. Pt. 4. For instance, Independence and Big T agreed to furnish all the necessary labor and equipment (Dkt.

---

[4] In adopting this rule, the court cited with favor <u>Duplantis v. Shell Offshore, Inc.</u>, where the Fifth Circuit held that an interest in employee safety did not suffice to subject a principal to liability for a subcontractor's actions. <u>Id.</u> at 697.

Nos. 38-2 at 7; 38-3 at 25). Tom Shupe testified that, although he met with Turner to discuss the project, Turner did not control the means and methods by which Big T performed its waterproofing (Dkt. No. 38-11 at 7-8). Newman testified that neither Turner nor Independence instructed Big T about how to do its job (Dkt. No. 38-13 at 20), and Hampton testified that Turner did not direct Independence how to dig the excavation at issue (Dkt. No. 38-14 at 3). Turner superintendent Kurt Johnson testified that no equipment or supplies were purchased from Turner (Dkt. No. 38-12 at 3), and superintendent Tyson Baker testified that he provided no input as to how the work was to be done (Dkt. No. 38-15 at 3). Based on this testimony, it is clear that Turner did not exercise sufficient control over either Independence or Big T to make it vicariously liable for the subcontractors' negligent acts.

**B.    Reasonably Safe Work Environment**

Although Turner is not vicariously liable for the acts of its subcontractors, it may nonetheless be liable under West Virginia law for violation of its duty to provide Newman with a reasonably safe work environment. <u>Sanders</u>, 225 S.E.2d at 223; <u>see also</u> <u>Pasquale</u>, 418 S.E.2d at 751 ("An employer owes a duty to provide a reasonably safe place to work to employees of independent

13

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT [DKT. NOS. 36, 38, AND 40]**

contractors who are on the premises. This duty includes the duty to warn of latent defects existing before the work is started that are known to the employer, but are not readily observable by the employee.").

In Sanders, the plaintiff was injured by a crane owned and maintained by the general contractor on whose property work was taking place. 225 S.E.2d at 220. The injury occurred because an independent contractor, by whom the plaintiff was not employed, placed and operated the crane in an unsafe manner. Id. After finding the general contractor had exercised sufficient control to be liable for the independent contractor's negligence, the court concluded that the evidence supported an alternative finding that the general contractor "knew or should have known that the crane was placed in an unsafe manner" and permitted "such conditions to exist without correction," thus breaching its duty to provide a safe work environment. Id. at 223.

Here, Newman was working on premises where his contract required him to be, thus making him an invitee of the occupier. Hall, 203 S.E.2d 145, Syl. Pt. 2.[5] Turner, therefore, had a "duty

---

[5] Although Turner was not the owner of the premises, its position as general contractor fulfills the "owner or occupier"

to provide [Newman] with a safe place to work." <u>Sanders</u>, 225 S.E.2d at 223 (unsafe crane placement); <u>Pasquale</u>, 418 S.E.2d 738 (improper labeling of cables in a power plant). If the risk to Newman involved trench cave-ins, then Turner had a duty to provide a reasonably safe work environment in that regard.

It is true that Turner cannot be held liable for the dangers created by an independent contractor after it turns over the worksite. <u>France</u>, 689 S.E.2d at 11.[6] In this case, however, the allegedly unsafe work environment that Turner provided for Big T was created by Independence, not Big T. When Turner directed Newman to conduct remedial waterproofing in a trench excavated by Independence, it owed Newman a duty to ensure that the work environment it turned over was reasonably safe. See <u>Pasquale</u>, 418 S.E.2d at 751. If Turner insufficiently supervised the safety

---

requirement. For instance, in <u>Hall</u>, the defendant was a general contractor employed by the state to do highway work. Although the land was not owned by the defendant, the Supreme Court of Appeals imposed the "owner or occupier" duty upon it. 203 S.E.2d 145.

[6] West Virginia typically requires a general contractor to retain control over a worksite in order to be liable for dangerous conditions created by an independent contractor. <u>France</u>, 689 S.E.2d at 11. There is also no rule, as exists elsewhere, that holds a general contractor automatically liable for the safety of all "common work areas." <u>See, e.g.</u>, <u>Funk v. General Motors Corp.</u>, 220 N.W.2d 91 (Mich. 1974).

requirements of the worksite, it then may have violated that duty. In this regard, the parties dispute a material fact about the completion of required inspections. In discovery, the defendants were unable to produce any checklists for the trench inspections they argue should have been completed between September 11–13, 2012 (Dkt. No. 36-4 at 2).

Although Parrish, Turner's safety inspector, testified that both Independence and Big T should have submitted excavation inspections (Dkt. No. 47-2 at 3; 43-4 at 4), he did not ask for the form, even after Newman's injury, and he could not state whether the forms actually had ever been completed (Dkt. No. 46-18 at 3-4). The lack of inspection forms is circumstantial evidence that Turner knew inspections were not completed and failed to ensure that the Safety Plan had been followed. Therefore, if Turner "knew or should have known" of an unsafe condition prior to turning over the worksite, but failed to remedy that condition, <u>Sanders</u>, 225 S.E.2d at 220, the jury could find it breached its duty to provide Newman with a reasonably safe place to work.

### C.  Contractual Delegation

Turner argues that it completely delegated its duty to provide a reasonably safe work environment to its independent contractors.

16

### MEMORANDUM OPINION AND ORDER
### DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS
### FOR SUMMARY JUDGMENT [DKT. NOS. 36, 38, AND 40]

This argument is unavailing. The subcontract agreement generally required Big T to comply with all safety regulations, and imposed responsibility on Big T for preventing accidents (Dkt. No. 38-3 at 10, 12). In addition, the agreement provided that Big T "assumes entire responsibility and liability for any and all damages or injury of any kind," and Big T agreed "to indemnify and save harmless" Turner against any such claims. Id. at 13.

Turner incorporated into the subcontract agreement the requirements of its Safety Plan, which outlines the subcontractors' specific duties. These include inspections "if applicable to the subcontractor's work," such as daily inspection of work areas and inspection of excavation operations (Dkt. No. 38-5 at 23, 26, 39-40). Notably, however, the Safety Plan identified administration of the program as one of Turner's primary responsibilities, and retained for Turner's own employees such duties as "requir[ing] compliance to the safety program by all personnel working on the project" (Dkt. No. 38-5 at 4, 14).[7]

_____

[7] This administration is consistent with Turner's regulatory duties. Title 29 C.F.R. § 1926.16(a) states that "[i]n no case shall the prime contractor be relieved of overall responsibility for compliance with the requirements of this part for all work to be performed under the contract." As the Supreme Court of Appeals has noted, OSHA issues citations to general contractors "for safety

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT [DKT. NOS. 36, 38, AND 40]**

Turner relies in part on an unpublished Fourth Circuit opinion to support its delegation of the duty to provide a reasonably safe work environment. <u>McLean v. Federal Street Const. Co., Inc.</u>, 77 F.3d 469 (Table) (4th Cir. 1996).[8] When viewed in the light most favorable to Newman, however, the facts of this case are distinguishable from <u>McLean</u>. First, in <u>McLean</u>, the plaintiff was injured by his own employer's equipment; here, Newman was injured as a consequence of excavation work undertaken by another independent contractor. Second, although Big T's subcontract agreement did impose primary liability on it for safety, the incorporated Safety Plan also outlined Turner's right and responsibility to implement and ensure compliance with the requirements of the plan (Dkt. No. 38-5 at 4, 14). Under these terms, it cannot be said that Turner had no duty to provide a reasonably safe work environment. Finally, unlike <u>McLean</u>, where the plaintiff could not proffer any evidence of negligent supervision,

---

violations that could reasonably have been prevented or abated by reason of the general contractor's supervisory capacity." <u>France</u>, 689 S.E.2d at 15.

[8] Unpublished decisions are not binding precedent in the Fourth Circuit. <u>See</u> 4th Cir. R. 32.1; <u>Minor v. Bostwick Labs., Inc.</u>, 669 F.3d 428, 433 n.6 (4th Cir. 2012).

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS**
**FOR SUMMARY JUDGMENT [DKT. NOS. 36, 38, AND 40]**

evidence sufficient to survive summary judgment supports Newman's argument that Turner failed to ensure that required inspections were completed.

## II.  Independence's Duty of Care

Newman asserts that Independence breached its duty of care by negligently building and compacting the excavation into which he fell (Dkt. No. 1-4 at 10). In response, Independence argues that it owed no duty to Newman, but rather that Newman and Big T were solely responsible for Newman's safety (Dkt. No. 41 at 6, 9-10). In essence, Independence argues that the subcontract agreement between Turner and Big T absolved it of any duty to exercise reasonable care. It cites no authority to support the proposition that a contract can impliedly eliminate duties of care owed by third parties, nor could it. The simple fact that Big T owed a duty of care does not lead inexorably to the conclusion that Independence did not. Like any party, Independence had a duty to exercise reasonable care where it was foreseeable that the failure to exercise such care would lead to injury. See <u>Sewell</u>, 371 S.E.2d 82, Syl Pt. 3.

Furthermore, the terms of Independence's subcontract agreement enforce this duty. Both Big T and Independence were responsible to

19

## MEMORANDUM OPINION AND ORDER
### DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS
### FOR SUMMARY JUDGMENT [DKT. NOS. 36, 38, AND 40]

prevent accidents and assumed liability for "any and all damage and injury" (Dkt. No. 38-2 at 15). Turner's Safety Plan required all subcontractors to "provide and maintain a safe, hazard free work place for their employees, *fellow workers*, and the general public" (Dkt. No. 38-5 at 4) (emphasis added).

When these facts are viewed in the light most favorable to Newman, there clearly are material disputes concerning the conditions of the site and responsibility for inspections that preclude judgment as a matter of law. The parties dispute both who owned and placed the ladder that Newman used to exit the trench (Dkt. Nos. 36-3 at 2; 46-12 at 13; 47-5 at 2). There also is a dispute concerning whether and for how long Newman could safely stand less than one foot away from the edge of Independence's trench.(Dkt. Nos. 36-3 at 5; 46-13 at 7; 46-16 at 4; 47-1 at 4, 7). In addition, the inspection disputes already discussed apply with equal force to Independence's alleged negligence. Newman argues that Independence had a duty under the regulations and the Safety Plan to conduct daily inspections of its excavation work (Dkt. No. 43 at 6; 38-5 at 39). The defendants are not in possession of any checklists for those inspections, and Newman argues that they were not completed.

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS**
**FOR SUMMARY JUDGMENT [DKT. NOS. 36, 38, AND 40]**

## III. Res Ipsa Loquitur

In his motion, Newman argues that he is entitled to judgment as a matter of law under the doctrine of <u>res ipsa loquitur</u>. This doctrine is an exception to the rule that negligence cannot be presumed, and it arises when "mere occurrences of certain events in and of themselves suggest negligence, barring another plausible explanation." <u>Kyle v. Dana Transport, Inc.</u>, 649 S.E.2d 287, 290 (W. Va. 2007). "Pursuant to the evidentiary rule of <u>res ipsa loquitur</u>, it may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when (a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff." Syl. Pt. 4, <u>Foster v. City of Keyser</u>, 501 S.E.2d 165 (W. Va. 1997) (rejecting requirements that the defendant have exclusive control and the plaintiff be without fault).

"It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached." <u>Id.</u> at 185. However, the plaintiff must demonstrate that he will present circumstantial evidence that

permits a jury to make the reasonable inference that the defendant has been negligent. <u>Kyle</u>, 249 S.E.2d 287, Syl. Pt. 4. A theory of <u>res ipsa</u> will not reach the jury when it requires them to speculate. <u>Id.</u> Indeed, "[i]t is 'clearly an incorrect statement of the law' to say that <u>res ipsa loquitur</u> 'dispense[s] with the requirement that negligence must be proved by him who alleges it.'" <u>Foster</u>, 501 S.E.2d at 178. Rather, the doctrine recognizes that circumstantial evidence can afford an appropriate basis for finding negligence. <u>Id.</u> at 184.

In <u>Kyle v. Dana Transport, Inc.</u>, the plaintiff was a master-electrician employed to repair the defendant's electrical panel. 649 S.E.2d at 287. The plaintiff was injured when the panel "blew up" as he was working on it. <u>Id.</u> He could not identify the cause of the accident, and the Supreme Court of Appeals concluded that he had not provided sufficient circumstantial evidence to allow a jury inference that his injury would not normally have occurred without the negligent conduct of the defendant. <u>Id.</u> at 292. In addition, the plaintiff had failed to rule out that his own work on the panel caused it to explode. <u>Id.</u>

Newman has not met his burden under the doctrine of <u>res ipsa loquitur</u> on a motion for summary judgment. Although the defendants

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS**
**FOR SUMMARY JUDGMENT [DKT. NOS. 36, 38, AND 40]**

did owe a duty to Newman, undisputed proof of the first and second elements is lacking. In support of the first element, that events of this kind typically involve negligence, Newman principally argues that the trench failed because Independence and Turner did not properly inspect the excavation (Dkt. No. 37 at 12-15). The defendants dispute this contention (Dkt. No. 46 at 7).

In addition, under the second element, Newman has not sufficiently ruled out his own conduct as a cause of his injury. Although Newman argues it is sufficient that he did not build the trench or place the ladder (Dkt. No. 37 at 15), neither Hampton nor Shupe could identify who owned the ladder (Dkt. Nos. 46-12 at 13; 47-5 at 2; 36-3 at 2). Equally significant is the fact that Newman was standing less than one foot away from the edge of the trench; there is conflicting testimony regarding whether it was safe for him to do, and, if so, for how long one could safely do so (Dkt. Nos. 46-13 at 7; 46-16 at 4; 36-3 at 5; 47-1 at 4). Thus, evidence is in contest as to whether Newman's own conduct was responsible in whole or in part for the incident.

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT [DKT. NOS. 36, 38, AND 40]**

## CONCLUSION

For the reasons discussed, the Court **DENIES** the motions for summary judgment of Newman, Turner, and Independence (Dkt. Nos. 36; 38; 40). The case will proceed to trial as scheduled.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: November 1, 2016.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE